The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. All right, Mr. Todd, whenever you're ready, we'd be happy to hear from you. Thank you, Your Honor. May it please the Court, 70 years ago, Congress enacted the Immigration and Nationality Act of 1952, in which they required immigration agents to get a warrant if they had time. 45 years ago, the 7th Circuit in Cantu emphasized that this statutory mandate should be seriously applied. 22 years ago, this Court in Harrison, on facts, on all fours with this case, emphasized the same and found that the unlawful arrest violated the statute. We fast forward to 2018, when immigration agents arrested Mr. Santos without a warrant. Their testimony at the detention hearing, at the suppression hearing, was that they never got warrants for these type of arrests, where they believed the person had a prior deport, that it was the prior, it was the common practice, and they didn't need a warrant. The government condoned that by asserting to the Court that... Counsel, in the cases that you've cited, did any of those courts authorize suppression as a remedy? Your Honor, Cantu did not, because they found that the likelihood escape requirement had been met because the defendant was in a vehicle. So they applied the statute and found that the arrest was lawful. In Harrison, Harrison did not have the benefit of this Court's subsequent Oscar Torres. In Harrison, they found that the arrest was unlawful. The reason they did not suppress evidence, because they did not have the benefit of Oscar Torres, and they relied on case law prior to Oscar Torres, that the identity is never suppressible. Well, I mean, but both the First and the Sixth Circuit have said that the statute, the 1357A, does not authorize suppression. And how can we just supply a remedy when the statute itself doesn't provide one? Your Honor, I think it's important to note that it doesn't matter if the statute is silent. That's precisely the situation where the Court can consider supervisory authority. There are basically three paths to suppression. When you say supervisory authority, that's a pretty sort of vague notion to ground this on, where you don't have any kind of statute providing a remedy. You can say, oh, well, a court sua sponte can simply use its supervisory authority. It's like the Court would be writing a statute, wouldn't it? Your Honor, I think supervisory authority is condoned and compelled by the Supreme Court McNabb case, which specifically addresses flagrant disregard of a statute. Well, I mean, but the Supreme Court has been very skeptical of the exclusionary rule. They've narrowed the suppression remedy quite substantially, and they're quite skeptical of it, even when they're dealing with a Fourth Amendment violation, there's concern in Justice Cardozo's old words about the criminal going free because the constable is blundered. Of course, the suppression remedy is alive and well for Fourth Amendment violations, but in terms of the Supreme Court's willingness to apply it, the Court has been very skeptical, and wouldn't it be all the more skeptical if there was no statutory basis for suppression, but simply the Court's own supervisory power? We'd be pushing forward, and we'd have some real headwinds here, and we'd be pushing forward with an extra statutory remedy, and the kind of remedy that the Supreme Court has been concerned and leery of. Isn't that a problem for an intermediate court? Your Honor, I agree that the supervisory authority is viewed as extremely rare. However, Your Honor, once again, I believe the standard has been confirmed by the Supreme Court that if there is a flagrant disregard of a congressional mandate, I know that Abdi and de la Cruz relied on the Sanchez-Llamas case, but the Supreme Court case of Corley, three years after, did recognize what the Supreme Court said in McNabb, and there was two important things. McNabb recognized that it was not a constitutional violation, and they also recognized that the statute was silent, and I think that's more appropriate, especially here, Your Honor, because as I see it, the touchstone of supervisory authority is in those rare instances where there is a flagrant disregard of a congressional mandate, and the purpose here is... Counsel, what's your best evidence of a flagrant disregard? The flagrant disregard, Your Honor, is repeatedly the arresting agent said they did not need to get a warrant and that they did not get warrants as required by the statute, and the government, their legal argument was the statute did not even apply. They also... Do you have any testimonial or documentary evidence other than your cross-examination of Agent Swivel? Well, on direct, on direct in pages 115, he says it was common practice not to get a warrant,  but you're relying basically on his testimony to represent a flagrant abuse for the entire agency. I'm not saying the entire agency. I'm saying at least in the E.T. District of North Carolina. I think it's worth noting that the same agents were involved in the unlawful arrest just a month before in the U.S. versus Juan Segura case, and the government made the argument there that they condoned the practice of arresting people without a warrant. Well, when you talk about that, the arrest here, there was... You say this was... What happened here was so awful. There was probable cause for the arrest for a violation of 1326A, which prohibited illegal reentry of a previously removed individual, and this individual was deported in 2011, and he obviously reentered the United States after deportation, and he was arrested in 2018, and the detective knew this, and he knew the prior deportation, and when he made the arrest, and so he clearly had probable cause for the arrest in light of what he knew of the statutory violation, and the warrantless arrests are particularly problematic without a warrant if you can't go into someone's home, and arrest them without a warrant, but on the other hand, people are arrested all the time without a warrant if they're in a public place, and I thought that the officers here had waited until he had left the house, and that the arrest was conducted in public. Is that not the case? Yes, Your Honor. He was about 20 feet from the door of his noble home. Well, but he was not arrested in his home. That's correct, Your Honor. Just out front of his home. Mr. Todd, let me ask you this. This warrant requirement, it doesn't require a neutrally detached magistrate to issue it. It can be issued by a supervisor within the department. Isn't that true? That's correct, Your Honor. In fact, the regulations have at least 50 different people that could authorize a warrant. It's an internal warrant. So how hard is it to get a warrant? It's very easy. As the magistrate judge in this case noted that he referred to the Segura Gomez where the judge said they could get a warrant during the lunch break, and here it was several days. Literally, it takes a matter of minutes, Your Honor. It is easy to do. I did want to address Judge Agee's question in terms of evidence of record. I would cite the Moreno v. Napolitano case from the Northern District of Illinois, pages 1005 to 1006. That sort of supports what the proffer was in terms of ICE counsel's representation to the government that even in a civil context and deportation, they don't get the warrants as required. Well, counsel, let me read you part of the cross-examination. I don't know whether that was you or another counsel below, but obviously on cross-examination, you're stuck with what the witness answers to your question. And the question was, is this your testimony you don't need a warrant to take the person into custody? Well, that's correct. Next question. That's the practice. Sometimes it is. This is the answer. Sometimes it is. Sometimes it isn't. That would seem to be a very weak read based upon one agent's testimony to find that there was a flagrant abuse that authorized an otherwise unauthorized remedy, in this case suppression. If I may respond, right after he says, sometimes it is, sometimes it isn't, he says on page 146, I can't speak for enforcement removal operations. In other words, ERO. They're the ones that handled a deportation after the person's been arrested. And he references that from 148 to 149. So when he says sometimes it isn't, the best read on that is he's referring to he can't speak for enforcement removal operations, but that was the agency involved in the Moreno versus Napolitano case, where I said on pages 1005 to 1006, they disobeyed the law there too. Well, we have, you know, we've been talking for a good many minutes about this situation. But the basic problem still remains. And I'm just not sure that you addressed it. And that is that the statute, nothing that I see permits or authorizes suppression as a remedy for a violation of the statute. And we just can't supply the remedy. And just to say that the court supervisory authority can step in. Well, under what criteria and what, you know, what I don't understand what the standards are for the court to be exercising its supervisory authority. But the main problem I have is it's just, it's just extra statutory. We can't just go around adding and inventing our own, our own remedy. And especially not when the Supreme Court is, is cast a skeptical eye towards suppression as a remedy. If suppression is provided as a remedy, that's one thing. But where is suppression authorized in this whole case? Suppression is authorized your honor by McNabb. And then subsequent quarterly, both of them emphasize that there was no constitutional or statutory provision, but they said it cannot stand that the executive branch can flagrantly disregard Congress. And in order to maintain fidelity to Congress, only the court is the one that can require that by suppression, your honor. And the statutory cases Donovan footnote, 22 quarterly and your honors casing plenty. They had specific provisions. That's why they were tied to the statute. But just because the statute doesn't specifically address it, it doesn't prevent the court from exercising the essential supervisory authority. And I think my reply, I, the history of 1357, which is why I cited the Copland case shows that Congress knows exactly what they do when they write a statute in 1950, the FBI had the same requirement that was taken out in 51. In 1952 was when Congress put that requirement in for immigration. So I think the implication is that they take it seriously. They expect the immigration agents to take it seriously and they hope the courts will help make sure that happens. I see my time. Well, we, we, we seem to be picking a conflict with the first and sixth circuit. Are we not? What? Because the, they made a point in those two cases that the statute didn't provide an authorization and they didn't supply one. May I respond to your honor? Pardon me? I, my time is up, but may I respond? Yes, you may. I think Abby got it wrong by relying solely on Sanchez Yamas. Sanchez Yamas is specifically said from the outset that supervisory authority cannot apply. And so Sanchez Yamas is not the be all and end all of supervisory authority. Number one. And like I said, quarterly after that refutes the assertion that you need a statutory provision the way they describe it. All right. Thank you, sir. You got some time in rebuttal, Mr. Todd. Thank you. But I'll ask either Judge A.G. or Judge Floyd if they have any further questions for you now. Not now. Okay. Mr. Booth, do you want to give us your view of it? Yes. Good morning, members of the court. Suppression is not warranted for a violation of the escape provision in eight U.S.C. 1357A. In Sanchez Yamas, the court said that suppression is ordinarily authorized in three situations. The constitutional violations for statutory violations, where there is an express statute of exclusionary or suppression remedy, or as a matter of supervisory powers, is only when the violation implicates important Fourth Amendment interests. And there they gave us the sole example of a Fourth Amendment interest, the knock and announce provision in 3109, which the Supreme Court ultimately held several years later to be actually a Fourth Amendment interest. So applying the Sanchez-Yamas test to this case, the government's position is one, there was no Fourth Amendment violation because the defendant was arrested in a public place and on probable cause. And that satisfies Watson and Santana. 1357A doesn't have an express statutory remedy for exclusion. And so that, that particular mode of analysis doesn't apply here either. And three, the escape provision in 1357 doesn't implicate an important Fourth Amendment interest. Let me give you a particular example. It's an analogy. For example, in Hodari D, the Supreme Court held that where a suspect was fleeing from the police and he threw some cocaine away as he was fleeing and fleeing, of course, is something akin to escape. The exclusionary rule didn't apply. And so therefore, if you don't have the exclusionary rule applying when somebody is fleeing from the police, a violation of the analogous escape provision in the statute doesn't warrant suppression either. And that is why the two courts of appeals, the Fourth Circuit and the Sixth Circuit have held that suppression is not a remedy for a violation of the vision in 1357A. I would like to turn to the alternative argument that there were systematic violations in this case. And on this issue, you have to look at the evidence in the light most favorable to the government. And even though the district court didn't expressly address it for some of the reasons we pointed out in our brief, this court can affirm a judgment on any ground in the record, even on a theory that the district court did not actually consider or address. There's no systematic violations in this case. If most you have a agent who violated the statute in this case, it may have violated it in another case, but there's been no showing that in all of his prior arrests, that those arrests were illegal. There simply was no showing of what the facts were in any of those particular cases. In many of those cases, maybe the escape provision was actually upheld or maybe the defendant was trying to escape. And the officer, Swivel, also testified that some of the practices he engaged in, he did to happen with 16 years ago when he was on border patrol. All right. Let, let me, Mr. Booth, Judge Floyd raised an interesting point and I think you, you do well to address it. And that is that there was a provision for, in the executive branch to get an administrative warrant and that that wasn't a difficult thing to do and that the officer could have gone and gotten an administrative, an administrative warrant here. What do you say with respect to the point that Judge Floyd had raised in his question? I would say the fact that the government has not sought to justify the arrest in this particular case, we decided for prudential reasons not to challenge the magistrate or the district court's ruling that the arrest violated the statute. As far as the facts in terms of getting these warrants, this is a very, very complicated area. But again, for purposes of this appeal of the government has decided solely to focus on the issue that was raised and addressed by the magistrate and the district court. We can see for purposes of this case that there was a statutory violation. Well, all right. But then the question arises, why could you have gotten a warrant from within the executive branch? Whatever you call them, an administrative warrant. Why not get it? Again, the record is a little bit unclear in this case. The agent testified that he didn't usually make arrests in situations like this. But other than that, we don't have a record as to why he didn't go out and seek an administrative warrant. I guess they're called the I-200s in this particular case. Again, Judge Wilkinson, we do not challenge the finding below that there was a violation of the statute. We are focused solely on the issue. I would have thought your answer to me might have been that assuming there was a failure to get a warrant within the executive branch that there's still no authorized remedy of suppression for that failure. Is that correct? Oh, of course. Our argument throughout is simply whether it was a failure to get an administrative warrant in this particular case, or even whether there had been any other violation of the statute. Suppression isn't authorized. It's not authorized, especially under supervisory powers, Judge Wilkinson. As you pointed out earlier in questioning appellant, the Supreme Court has one consistently cut back on the scope of the exclusionary rule. For example, in Hudson, they said that there are alternatives now to suppression, including internal police discipline and civil suits. So if there turns out to be systematic violations or an agent is doing this repeatedly, those are the better methods rather than suppression. And the Supreme Court has also, not only has cut back on the exclusionary rule, but it's also cut back on the lower court's supervisory powers in cases like the Carlisle case, which was the rule 29 case in painter, which was the fourth amendment case back of Nova Scotia, which was the harmless error case. The Supreme Court there has said over and over again that where there have been rules enacted by the Congress courts don't have supervisory authority to go beyond those. And here you have a statute in which Congress has specifically said, or at least has not authorized suppression as a remedy. And though, therefore we believe that it would be an ex only an extraordinary case. Okay. So a suppression is not the remedy. What would be the remedy? Well, for example, two of the examples that were mentioned in the Hudson case, Hudson by the way is cited in my brief in the footnote, the Supreme Court there said in, in cutting back on the exclusionary rule, the Supreme Court indicated that the internal police disciplinary measures and civil suits would be alternatives to suppression. So if it turns out that there's a case in which perhaps the ICE agents or home DHS agents are not following the statute, one of the ways is to bring that attention to their supervisor so they can be disciplined. Another thing would be, as a felon is pointing it out is to follow the civil lawsuit to try to prevent these things from happening. But suppression is not the remedy in a situation like this. I don't, I'm sorry. I don't have any further discussion. I'll be happy to answer any questions that any of the judges may have. Do you have any questions? One quick question in the, when, when looking at the topic of flagrant abuse as a rationale for suppression in those cases, is it your view of the law that there has to be a important fourth or fifth circumstance before a remedy for a statutory violation could include suppression? Yes, I think that that follows from Sanchez-Lamas. I believe the Supreme Court was intent on narrowing the scope of a lower court's authority to use exclusion as a remedy for a purely statutory violation. If you read Sanchez-Lamas at various points, they talk about how this is the last resort. Suppression is not our first impulse. It noted, for example, how America seems, this is in Sanchez-Lamas, how America seems to be one of the only countries that uses suppression as a remedy for a fourth amendment and equivalent violations. So the Supreme Court was pretty interested in Sanchez-Lamas in limiting the scope. When you talked about flagrant disregard, I believe that that term comes from the Supreme Court's decision in Painter where they left open the idea that you could have supervisory authority to suppress evidence. But the Supreme Court has moved on from that in Sanchez-Lamas and again, in cases like Carlisle and back of Nova Scotia. Again, it would have to be an extraordinary case, maybe violations on a national scale before a court of appeals would be entitled under its supervision. Is it fair to say there's no flagrant disregard? I agree with you. The systematic disregard has not been developed in the district court, but is it fair to say that there's a flagrant disregard of a fourth amendment interest or whatever when an individual is arrested in public and there's probable cause for the arrest in terms of what the officer knew that there was a re-entry after removal and deportation? I mean, if the bottom line here is we're worried about the flagrant disregard of a fourth amendment interest and the like, I mean what happened here really as a bottom line was there was an arrest in a public place where the officer or the detective had probable cause to know that there was a re-entry after deportation. And that can't be an egregious assault upon the fourth amendment. If they'd gone in the house without a warrant, yeah, that's a different case altogether. If they'd used excessive force in some way or you'd have a Graham v. Connor violation, that would be serious. But I just wonder whether this is the right case to find that something has gone terribly wrong here when there was a warrantless arrest in a public place for a known violation. That happens with great frequency. Well, I agree with you, Judge Wilkinson. You indicated an arrest in a public place on probable cause. There's no reason to invoke the supervisory power to exclude interest because in that situation, there hasn't been a violation of an important fourth amendment interest. Yes, we agree that there was a violation of the statutory escape provision, but the escape provision is simply an addition that Congress has added in the immigration context. It is not a freestanding fourth amendment interest. As I said earlier, in Hodari D, the Supreme Court held that we're a fleeing suspect through a rock away, a rock of cocaine that the exclusionary rule didn't apply there. Well, if it doesn't apply when you're fleeing from the police, it doesn't apply when there's a violation of the statutory escape provision. And that's why the two courts of appeals have so held. All right. Judge Floyd, do you have further questions of Mr. Booth? No, sir. All right. We thank you. And thank you very much, Mr. Booth. And we'd like to hear from Mr. Todd in rebuttal. It would be my contention. I think McNab and court is support this that supervisory authority is not only appropriate when there's assault on a constitutional right, but when there's assault on Congress, the Watson case that government council said on page 749, a court student to enforce an agency regulation is most evident when compliance with the regulation is mandated by the constitution or federal law. The painter case footnote, eight member emphasizes what McNab said that the importance of the supervisory authority, although rarely applied is for two things to deter illegal executive agency conduct and to maintain the integrity. You know, you just, and I appreciate your candor, but you just use the words, although rarely applied. And my question to Mr. Booth is if, if application of this of an unauthorized remedy is, if this is one of those rare cases, I don't understand how an arrest in a public place, uh, without a warrant for a known, a known violation can be a good vehicle for, uh, what you rightly term is something supervisory authority that's only rarely exercised, but you are asking for it to be exercised in a very commonplace situation. Your honor, I agree it's rare, but I think it's a rare case and rare does not mean never. Number one, number two, there is no other remedy other than suppression because the person will get deported. So there's no other remedy. It's an easy compliance for them to do. Um, well, I'm not sure there's no other remedy because you know, that sometimes, um, sometimes these, these violations can be looked into in all kinds of ways. Um, Congress exercises supervisory authority and it holds hearings and the rest. And if there's something untoward going on, Congress can hold a hearing about it. There can be internal disciplinary procedures for someone who gets off the track. Um, and, um, it's not clear to me that everyone is deported because they may be just confined or, or, uh, serving a prison term. And we have people bringing, or have individuals bringing 1983 suits, um, from, um, conditions of confinement. So I, I don't, I just don't buy the argument that, that it's either suppression or nothing because I can think, cause I've just mentioned that there are three, uh, different means of recourse. I mean, they may not be your preferred, but I have a feeling that they would be. I think the Supreme Court would take note of them. It can't be. Oh, well, I made the point. It, this is not a good vehicle for applying an unauthorized remedy. It is if there's some, if, if there's something more here, if there's a, but, but this, this is a fairly commonplace situation. I'm not sure if I have any time left or not. Well, you go ahead. I think I'm always, I always think that a litigant should get the last word. So I would appreciate it if you would make a, some brief closing remarks, would you mind doing that? Mr. Todd? Yes, sir. I, I, I'm ready to go forward. Your honor. All right, go ahead. Your honor. I read with interest. Deportation will follow and will happen regardless of whether the evidence is suppressed. Whether that be immediately, in this case, that's important to know that that's the reason why they supposedly arrested him. They used the Trojan horse. So suppression will merely prevent them from doing something that they obtained in flagrant disregard of a congressional statute. And it will accomplish the purpose for which they arrested him, which is deportation. There is no other remedy. Somebody that's in Honduras is not going to be able to raise the 1983 claim, your honor. And in terms of internal compliance, I don't know that that's the case. So maybe not. Well, they're going to get deported. That's, you know, that's, that's what's going to happen in every case, your honor. Well, I mean, you know I suppose that's one of the remedies that Congress has provided for. We have to look at what the remedies are that Congress has provided for a violation of 1326. If someone has indeed made an illegal rent re-entry into the country after being previously removed. Well, we have to consider the fact that, you know, that's an important remedy to deportation is an appropriate remedy for a violation of this statute. That's part of the mix. The only question problem I have is it just seems hard to get around the fact that this statute does not authorize suppression as a judicially imposed remedy. That's just as a matter of bedrock law. It is not there in the statute. It's not there, but Supreme court law doesn't require it to be there, your honor. All right. Thank you. Thank you very much, Mr. Todd. We appreciate your argument a great deal and we appreciate Mr. Booth. I'm sorry. I forgot to ask Judge Agee and Judge Floyd if they have any further questions of you. Judge Agee, Judge Floyd, do either one of you have any further questions of Mr. Todd? No, sir. No, sir. All right. Thank you both. I'm sorry we can't come down and greet you personally, but that doesn't mean that we're any less appreciative. And you take care and have a nice day. And we will adjourn court and reconvene for our private confidential conference in five minutes. Thanks also to the courtroom deputy for her help on this. This honorable court stands adjourned until this afternoon. God save the United States and it's honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd